```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/29/13
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
RICKY SAVOIE,

                        Plaintiff,

      -v-

MICHAEL J. ASTRUE,

                       Defendant.
------------------------------------------------------------------X

11 Civ. 1858 (KBF)

OPINION & ORDER

KATHERINE B. FORREST, District Judge:

      Plaintiff Ricky Savoie seeks review of the Social Security Administration's ("SSA") denial of his decade-old claim for disability benefits based upon a knee injury he sustained while climbing out of a tractor-trailer.  Plaintiff asks the Court to extrapolate the SSA's finding (in a separate, later-filed case) that plaintiff was disabled beginning in October 2006 to mandate reconsideration of the SSA's determination that plaintiff was not disabled from 2003-2006.

      Now before the Court are plaintiff's motion for judgment on the pleadings (ECF No. 15) and the Commissioner of Social Security's (the "Commissioner") cross-motion for judgment on the pleadings.  (ECF No. 20.)  As the evidence supporting the post-2006 disability determination—largely based on evidence of psychiatric conditions arising after 2006—is immaterial to plaintiff's 2003-2006 disability status, the Commissioner's motion is GRANTED and Plaintiff's motion is DENIED.

1

I. BACKGROUND

    A. <u>Factual Background</u>

        1. Physical Conditions

On January 27, 2003, plaintiff—a truck driver for a performing arts company—fell while getting out of his tractor-trailer in Vail, Colorado. The doctor at a nearby hospital assessed a probable tear of the anterior cruciate ("ACL") and medial collateral ("MCL") ligaments in plaintiff's knee. (Administrative R. ("R") at 113.) Shortly thereafter, plaintiff moved to New York, where he saw Dr. Ronald Scheinzeit in connection with his worker's compensation claim. Scheinzeit ordered an MRI that showed no ACL or MCL tear. (R. at 136–40, 178, 180–84.) He diagnosed a left knee sprain and prescribed physical therapy and Naprosyn, a drug used to treat pain and inflammation. (R. at 136–37.) Plaintiff reported improved range of motion in the knee after one month, and Scheinzeit discontinued the therapy in late 2003. (R. at 135.)

In the first half of 2004, plaintiff continued to complain of knee and back pain. (R. at 133–35.) To treat the knee pain, Scheinzeit referred Plaintiff to Dr. Lawrence Kusior, an orthopedic surgeon. That summer, Kusior diagnosed a chronic ACL tear and recommended arthroscopic knee surgery. (R. at 130–31.) Plaintiff applied to the Workers Compensation Board to approve the surgery. (R. at 141.)

To treat his back symptoms while awaiting the knee surgery approval, plaintiff consulted with orthopedist Dr. Thomas Li, who diagnosed plaintiff with traumatic arthritis. (R. at 143.) Li noted that Plaintiff's gait was normal and he

could perform a full squat.  (R. at 142.)  He noted that plaintiff cold perform household chores that were "not too strenuous."  (R. at 141.)

Plaintiff had the arthroscopic knee surgery on November 4, 2005.  (R. at 163.)  Immediately after the surgery, Kusior wrote a treatment note that he expected plaintiff to be able to do work involving "light duty" until May 2006, (R. at 292), and could return to "full duty" after (R. at 525).[1]  Plaintiff regained partial weight bearing by the middle of November.  (R. at 159-60.)

In December 2005—one year after the surgery—plaintiff hyperextended his knee but did not re-injure the ligaments.  (R. at. 154.)  Plaintiff sought additional treatment from physiatrist Dr. Orsoville Cabuto, who noted plaintiff's knee was swollen and stiff and retained residual pain from the surgery. (R. at 220.)  Based upon the single visit, he stated plaintiff had a "temporary total disability."  (Id.)

In July 2006, Kusior revised his diagnosis to note—in the context of plaintiff's ongoing workers compensation claim—that plaintiff had not recovered sufficiently to return to work, and agreed that plaintiff had a "temporar[y] total disability".  (R. at 270.)  He estimated plaintiff would be able to return to work in November 2006.  (R. at 270.)

Also that month, Cabatu again evaluated plaintiff and found that he could "occasionally" lift and carry up to 20 pounds, and could "frequently" lift objects of less than ten pounds.  (R. at 279.)  He opined that plaintiff would not be able to sit

---

[1] In January 2007, Kusior wrote a follow-up note explaining that the "light duty" note was issued in error; for the purposes of worker's compensation, plaintiff was "temporarily totally disabled" from work in November, 2005.  (R. at 525.)

for six hours or stand for two hours during a normal eight-hour workday. (R. at 279–80.)

        2.      Psychological Conditions

In addition to the knee injury, plaintiff has alleged disabling psychological conditions, but the supporting evidence for those allegations came after the ALJ had rendered an adverse decision in October 2006, and related to symptoms arising after that date.

In his initial application for disability benefits in December 2004, plaintiff mentioned no psychological issues. He explained he engaged in leisure activities including reading, going to the theatre, and taking short walks around the block. (R. at 98.) He reported neither problems with attention span nor memory. (R. at 94-95.)

It was only in early 2005—while awaiting his surgery to be approved—that plaintiff noted in passing that he was "becoming" depressed as a result of his knee condition. (R. at 100.) At the ALJ hearing, plaintiff, represented by counsel, did not proffer any evidence from a treating psychiatrist; indeed, he did not even raise depression as a potential ground for a disability finding.

Plaintiff sought treatment for depression beginning in February 2007—several months after the October 2006 ALJ decision discussed below. (R. at 451-52, 464-65, 527, 533-35, 537, 572-86, 593-620.) He was diagnosed with an affective disorder and anxiety-related disorder by a state-retained examining physician in August 2007. (R. at 469.)

4

B.     Procedural History

Plaintiff filed an application for disability insurance benefits on November 24, 2004, for the period beginning January 27, 2003 (relating to his knee injury). The SSA denied the claim and plaintiff requested an ALJ hearing. ALJ Carl Stephan denied relief on October 11, 2006. (R. at 16-29.) The Appeals Council denied plaintiff's appeal.

Plaintiff appealed the decision to this Court. See Savoie v. Astrue ("Savoie I"), 07 Civ. 8346 (GEL)(HBP)(S.D.N.Y. Sep. 25, 2007).

While the district court challenge was pending, plaintiff filed a new application for disability insurance benefits ("Savoie II"), also for the period beginning January 27, 2003, but this time continuing through 2009. At the ALJ hearing on Savoie II, plaintiff's counsel agreed voluntarily to exclude the period from January 27, 2003, through October 11, 2006—the period at issue in the then-pending appeal of Savoie I—from the ALJ's consideration. On January 29, 2009, ALJ Brian W. Lemoine issued a fully favorable decision, finding plaintiff was disabled beginning October 12, 2006. (R. at 351.) Lemoine cited reconstruction of the ACL, chronic low back pain, major depression, and a schizoaffective disorder as the bases for his decision. (Id.)

After the favorable decision on Savoie II, the Commissioner agreed to a voluntary remand of Savoie I on March 30, 2009. See Stip. and Order of Remand, Savoie I, ECF No. 20. On remand, the Appeals Council considered the impact of the evidence supporting the Savoie II decision on Savoie I. (R. at 343-47.) The Appeals

Council found that the new evidence did not merit reversal of the denial of benefits in Savoie I and denied plaintiff's appeal.

Plaintiff filed the instant action on March 17, 2011. (Compl., ECF No. 1.) Plaintiff filed a Fed. R. Civ. P. 12(c) motion for judgment on the pleadings on December 21, 2011 (ECF No. 15.) and defendant cross-moved on February 2, 2012. (ECF No. 20.)  The undersigned vacated the referral to the magistrate to whom the case had been referred on March 13, 2013.  (ECF No. 24.)

II.     STANDARD OF REVIEW

The Federal Rules of Civil Procedure provide that a party may move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial . . . ." Fed. R. Civ. P. 12(c).  Review of Rule 12(c) motions mirrors that of Rule 12(b)(6) motions to dismiss.  Bank of N.Y. v. First Millennium, Inc., 607 F.3d 905, 922 (2d Cir. 2010).  In brief, "[t]o survive a Rule 12(c) motion, the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Id. (quoting Hayden v. Paterson, 594 F.3d 150, 160 (2d. Cir. 2010)) (internal quotation marks omitted). The Court draws all reasonable inferences in favor of the counter-claimant.  Id.

III.    DISCUSSION

Plaintiff's memorandum of law in support of its motion for judgment on the pleadings is cryptic, at best.[2]  It appears to challenge five aspects of the proceedings

---

[2] The memorandum submitted by counsel for plaintiff is rife with misspellings, incomplete sentences and arguments lacking grammatical or legal sense. The submissions were difficult to understand, to say the least. The Court cautions plaintiff's counsel that his duty to his client requires greater

6

below: (1) that defendant failed to submit portions of the administrative record for this Court's review, (2) that ALJ Lemoine wrongfully precluded plaintiff from requesting to reopen the portion of Savoie II dealing with 2003-2006, (3) that the Appeals Council failed to give plaintiff notice and an opportunity to present new evidence after the first remand from this Court, (4) that the case must be remanded for the consideration of new material evidence, and (5) that the ALJ's determination was not supported by substantial evidence.

Plaintiff's first three grounds are frivolous.  First, for the purposes of this Opinion and Order, the Court has considered the evidence plaintiff alleges was omitted from the administrative record.  Second, plaintiff's own counsel agreed to exclude the 2003-2006 period from Savoie II; plaintiff has thus waived any objection through the actions of his counsel.  On the third ground, far from denying plaintiff an opportunity to present new evidence, the Appeals Council actually received and considered such evidence. (See Notice of Appeals Council Action, Jan. 12, 2011, Compl. Exh. 2, ECF No. 1.)  Plaintiff's argument that the Appeals Council failed to give required notice cites to a regulation that is wholly inapplicable.[3]

The Court considers the remaining grounds—new evidence and lack of substantial evidentiary support—below.  Neither merits remand.

---

diligence. In the interests of a full and fair review, the Court construes plaintiff's brief to raise the strongest arguments it suggests.

[3] The notice provision, 20 C.F.R. § 404.969 applies only when the Appeals Council decides on its own motion to review the ALJ's decision; here, the Council is reviewing the decision pursuant to an Order of Remand of this Court.  Plaintiff had notice of the opportunity to submit evidence and it appears he did submit such evidence.

A.   New Evidence

Plaintiff asks the Court to remand the case for the consideration of new evidence he attaches to his complaint and motion papers.

The Court may order a remand to the Commissioner to consider new evidence, but only where such evidence is "material" and "there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g) (1982).  "Thus, an appellant must show that the proffered evidence is (1) 'new' and not merely cumulative of what is already in the record, and that it is (2) material, that is, both relevant to the claimant's condition during the time period for which benefits were denied and probative."  Tirado v. Bowen, 842 F.2d 595, 597 (2d Cir. 1988)(citations omitted).  In addition, to be material, there must exist a reasonable possibility that the new evidence would have produced a more favorable outcome for the claimant.  Id.  "'Good cause' for failing to present evidence in a prior proceeding exists where . . . the evidence surfaces after the Secretary's final decision and the claimant could not have obtained the evidence during the pendency of that proceeding."  Lisa v. Sec'y of Dept. of Health & Human Services of U.S., 940 F.2d 40, 44 (2d Cir. 1991).

The additional evidence plaintiff submits here is either duplicative of information in the record, refers to time periods after 2006, or would not have changed the ALJ's decision below.  For example, plaintiff submits a May 2007 statement from his friend Samuel St. Jean which merely duplicates plaintiff's evidence regarding back and knee pain. (See Function Rept., Aug. 7, 2007, Decl. of

8

Irwin M. Portnoy ("Portnoy Decl.") Ex. 3, ECF No. 15.)   The statement speaks of plaintiff's present psychiatric symptoms but does not include any evidence of symptoms during the relevant period.  (Id. at 6-9.)

Likewise, as to the academic reports plaintiff now submits (showing poor performance in high school and at Dutchess Community College), he makes no showing of good cause as to why the reports were previously unavailable.  Even if he made such a showing, there is no indication that they would have altered the Commissioner's determination, given the overwhelming evidence before the ALJ in Savoie I suggesting that plaintiff was cognitively fit for work.[4]

In reviewing the additional evidence, then, the Court finds not a shred to justify the administrative expense of a remand to the SSA.

B.   2006 Disability Determination

In addition, the Court finds no reversible error in the ALJ's October 11, 2006, denial of disability benefits at issue here.

1.   Legal Standard

This Court's review of the Commissioner's decision is limited to (1) whether the ALJ applied the correct legal standard, and (2) whether his findings of fact are supported by substantial evidence. 42 U.S.C. § 405(g); Shaw v. Chater, 221 F.3d 126, 131 (2d Cir.2000).

The legal standard the Commissioner is to apply in his decision consists of five steps:

---

[4] This evidence includes, inter alia, the fact that plaintiff successfully drove a tractor-trailer prior to his injury, that he completed a GED program, and that he enjoyed reading and going to the theatre.

(1) The Commissioner decides whether the claimant is currently engaged in substantial gainful activity. If s/he is, the claimant is deemed not disabled.

(2) If the claimant is not, the Commissioner decides whether the claimant has a "severe impairment" that significantly limits his/her ability to work. If s/he does not, the claimant is deemed not disabled.

(3) If he/she does have a severe impairment, the Commissioner decides whether it qualifies as one listed in 20 C.F.R. Part 404, Subpart P, App. 1. If it does, the claimant is deemed disabled.

(4) If it does not, the Commissioner decides whether, despite the claimant's severe impairment, s/he has the residual functional capacity to perform his/her past work. If s/he does, s/he is deemed not disabled. If the claimant has no relevant past work or there is not sufficient evidence about it, this step may be skipped.

(5) Finally, if the claimant cannot perform past work, or if the fourth step was skipped, the burden shifts to the Commissioner to demonstrate that there is other work that the claimant can perform given residual functional capacity.[5]

See 20 C.F.R. §§ 404.1520, 404.1560(c), 416.920; DeChirico v. Callahan, 134 F.3d 1177, 1179–80 (2d Cir.1998).

---

[5] "In the ordinary case, the Commissioner meets his burden at the fifth step by resorting to the applicable medical vocational guidelines (the grids), 20 C.F.R. Pt. 404, Subpt. P, App. 2 (1985). The grids take into account the claimant's residual functional capacity in conjunction with the claimant's age, education and work experience. Based on these considerations, the grids indicate whether the claimant can engage in any substantial gainful work existing in the national economy." Callahan, 158 F.3d at 78 (citations and quotation marks omitted).

The ALJ's findings of fact are supported by substantial evidence when, considering the record as whole, they are made up of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir.2004) (per curiam) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). The Court will uphold a Commissioner's decision that is supported by substantial evidence, even when contrary evidence exists. Alston v. Sullivan, 904 F.2d 122, 126 (2d Cir.1990).

    2.    October 11, 2006 ALJ Opinion

Leaving aside the requests for additional evidence denied above, the Court's review of the October 2006 ALJ decision (denying relief for the period from January 27, 2003 to October 11, 2006) is straightforward. (R. at 19.)  Plaintiff does not dispute that ALJ Stephan applied the correct legal standard; instead, he challenges the ALJ's step four determination that he retained the residual function capacity to perform sedentary work.[6]  This challenge does not merit remand.

The step four RFC determination was supported by substantial evidence. The ALJ concluded that plaintiff retained the RFC "to perform sedentary work activity", after making a factual finding that plaintiff would have been able to sit for six hours in an eight hour work day and stand or walk for two hours. (R. at 23, 26.) The ALJ gave due weight to plaintiff's persistent knee pain but noted that plaintiff generally took no medication for his pain and sought no medical treatment until

---

[6] At steps one and two, the ALJ first found that the Plaintiff was not "engaged in substantial gainful activity" since January 27, 2003 and had a "severe impairment" in his left knee. (R. 21–22.)  He found plaintiff's back pain not to qualify as a "severe impairment." (Id.)  At step three the ALJ concluded correctly that the knee impairment was not a listed impairment in 20 CFR Pt. 404. (Id.)

11

July 2003—nearly seven months after his injury. (R. at 25.) After the surgery, Plaintiff only occasionally took pain medication. (R. at 26.) Dr. Li found that plaintiff could perform a full squat and had a normal gait. In addition, the ALJ pointed to Dr. Cabatu's report that by 2006 plaintiff was no longer using crutches and he "exhibited full extension of his left knee." (R. at 27.) In addition, Dr. Kusior consistently reported that plaintiff's knee was stable. (R. at 151, 153, 156, 255, 265, 267, 268.) While the ALJ acknowledged that plaintiff's consulting work did not rise to the level of gainful employment, he noted that plaintiff engaged in leisure activities such as walking in his neighborhood and doing household chores that were not "too strenuous." (R. at 133, 141.)

Admittedly, the ALJ's conclusion conflicted with the reports of two of plaintiff's treating physicians, Cabatu and Kusior, that plaintiff was "temporarily fully disabled" during the period following the November 2005 surgery.

The Court notes that the Cabatu and Kusior opinions came in the context of their role as evaluating physicians for plaintiff's worker's compensation claim. A "full disability" for the purposes of worker's compensation indicates the patient's inability to perform his specific past employment; in contrast, "total disability' for the purposes for the Social Security Act refers to an inability to perform <u>any</u> relevant employment. <u>See</u> 20 C.F.R. § 404.1504; <u>Rosado v. Shalala</u>, 868 F.Supp. 471, 473 (E.D.N.Y. 1994)(noting workers compensation disability determinations are not binding on the SSA because they differ from those for Social Security).

12

However, irrespective of the "disability" definition the doctors intended, the ALJ properly explained why he discounted their opinions. He reasoned that Cabatu's opinion was based on only a single examination and did not reflect the gradual improvements in plaintiff's condition that Cabatu himself reported throughout 2005 and 2006. By 2006, Cabatu observed that plaintiff no longer used crutches and had regained full extension of the left knee. (Id. at 26-27.) Likewise, Kusior found that plaintiff's knee was stable and he made no indication that plaintiff would not be able to sit for at least six hours, as required for sedentary work activity. (Id. at 27-28.)

Because the ALJ rested his decision on "adequate findings supported by evidence having rational probative force," Veino, 312 F .3d 586, the Court affirms his October 11, 2006 decision.

IV.     CONCLUSION

In light of the foregoing, the Court GRANTS defendant's motion for judgment on the pleadings and DENIES plaintiff's motion for judgment on the pleadings. The Clerk of Court is directed to close the motions at ECF Nos. 15 and 20 and to terminate this action.

SO ORDERED.

Dated:      New York, New York
            March 29, 2013

_____
KATHERINE B. FORREST
United States District Judge